**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **MATCH GROUP, LLC** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 6:18-cv-00081** |
| **v.** | § | |
| | § | |
| **TANTAN LTD.** | § | **JURY TRIAL DEMANDED** |
| **(A/K/A TANTAN CULTURE** | § | |
| **DEVELOPMENT (BEIJING) CO., LTD.)** | § | |
| | § | |
| | § | |
| **Defendant.** | | |

<u>**PLAINTIFF MATCH GROUP, LLC'S ORIGINAL COMPLAINT**</u>

## I.      INTRODUCTION

Match Group, Inc. is the worldwide leader in online dating, with multiple popular brands of matchmaking services, including Match, Plenty of Fish, OkCupid, and more.  Plaintiff Match Group, LLC, a wholly-owned subsidiary of Match Group, Inc., owns Tinder and its related intellectual property.  Tinder is one of Match's flagship brands.  When released, it launched a cultural revolution in social networking and online dating.  Tinder is famously characterized by a stack of swipeable cards containing photographs of potential matches nearby.  If a user is interested in the person shown, the user swipes right.  If not, the user swipes left.  If two users swipe right on each other, a match has been made, and the users are permitted to communicate with one another through the app.  The app has become so well-known that an entire generation is often described as the "Tinder generation."

Match, through Tinder, has spent significant time and money advertising the Tinder brand, including Tinder's unique card-based swipe design.  Match has also spent significant time

and money designing an attractive, artistic app, protected by both design patents and copyright. As a result of all of these efforts, Match has significant intellectual property rights related to the Tinder application and the Tinder brand.  This is a case about infringement of that intellectual property.

Tantan has copied Tinder's world-changing, card-swipe-based, mutual opt-in premise. Tantan, described as the "Chinese Tinder" or a "Tinder Clone," has also copied Tinder's general look-and-feel in an attempt to trade off of Tinder's name and brand and to meet user expectations that Tinder itself and its brand created.  These actions infringe upon Match's valid and enforceable intellectual property rights.  Match brings this complaint to stop Tantan's unlawful infringement.

## II.    THE PARTIES

1.    Plaintiff Match Group, LLC is a Delaware Corporation with a principal place of business in Dallas, Texas at 8750 N. Central Expressway, Suite 1400.

2.    Tantan Ltd. is a Chinese corporation with a principal place of business located in Beijing, China.  Tantan Ltd. has also been referred to and known as Tantan Culture Development (Beijing) Co., Ltd.

## III.    JURISDICTION AND VENUE

3.    This Court has personal jurisdiction over Tantan, Ltd. consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute.  Tantan conducts business and has committed acts of patent infringement and/or has induced and/or has contributed to acts of patent infringement by others in the Western District of Texas, the State of Texas, and elsewhere in the United States.

4.    This Court has original subject matter jurisdiction over Match's claims for patent infringement pursuant to the Federal Patent Act, 35 U.S.C. § 101 *et seq.* and 28 U.S.C. §§ 1331

and 1338(a).  The Court has original subject matter jurisdiction over Match's Lanham Act claims under 15 U.S.C. § 1051 *et seq.*  The Court has original subject matter jurisdiction over Match's copyright claim under 17 U.S.C. §§ 101 *et seq.*  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in this District because Tantan Ltd. is a foreign corporation and this lawsuit is thus outside the scope of the venue laws.  Additionally, Tantan has committed acts of infringement in the District by making, using, and selling the Tantan app in the District and is subject to personal jurisdiction in the District.

## IV.    FACTUAL ALLEGATIONS

### A.    The Creation of Tinder

6.    The Tinder app was first conceived at and created by "Hatch Labs," a technology incubator owned by Match's ultimate parent company, InterActive Corp ("IAC").  Sean Rad, Justin Mateen, Jonathan Badeen, Joe Munoz, Chris Gulczynski, Whitney Wolfe-Herd, and others formed the early Tinder team that conceived, designed, developed, and conducted initial marketing efforts for the Tinder app.

7.    Released in September 2012 for iPhone devices, Tinder revolutionized online dating services.  From its earliest days, the premise of Tinder has been fundamentally the same. Tinder users are shown other users ("potential match(es)") based on certain parameters, including age range and geographic location.  The user is shown a card with a photo of a potential match nearby.  The user is then given a choice to indicate interest (or lack thereof) in the potential match merely by swiping the card right (if interested) or left (if not).  Although the earliest iterations of Tinder did not include the ability to swipe left or right, once implemented, swiping on Tinder became a cultural sensation.

8.    Tinder is now one of the most popular apps in the world.

**B.    Match's Tinder-Related Intellectual Property**

9.    Match has been awarded numerous design patents related to ornamental aspects of the Tinder app.

10.    One such design patent, United States Patent No. D798,314 (the "'314 Patent"), entitled "Display Screen or Portion Thereof with a Graphical User Interface of a Mobile Device," issued September 26, 2017.  The '314 Patent is attached hereto as Exhibit A.

11.    Another design patent, United States Patent No. D791,809 (the "'809 Patent"), also entitled "Display Screen or Portion Thereof with a Graphical User Interface of a Mobile Device," issued July 11, 2017.  The '809 Patent is attached here as Exhibit B.

12.    Match also has a federally registered trademark, Reg. No. 4,465,926, for "swipe" in connection with computer application software for mobile devices, namely, software for social introduction and dating services.  Tinder first used this mark in commerce on or around March 28, 2013.  The registration for Tinder's "swipe" mark is attached as Exhibit C.

13.    Match also has a federally registered trademark, Reg. No. 5,010,727, for "rewind" in connection with downloadable software in the nature of a mobile application for internet-based dating and matchmaking.  Match first used this mark in commerce on or around March 2, 2015.  The registration for Tinder's "rewind" mark is attached as Exhibit D.

14.    Match is also currently seeking federal registration for "swipe left" and "swipe right" in connection with mobile applications for social introduction and dating services.

15.    Match also has common law trademark rights.  For example, Match, through Tinder, has used the marks "swipe left" and "swipe right" in connection with mobile applications for social introduction and dating services nationwide.  It first used these marks in commerce on or around March 28, 2013.

16.    "Swipe," "swipe left," and "swipe right" have become synonymous with the

Tinder app.

17.    For example, the Telegraph listed "swipe" as a 2015 "word of the year," writing that its choice "reflect[ed] the popularity of the dating app Tinder, in which users can swipe their finger across the screen to approve or dismiss would-be dates."

18.    The English Oxford Dictionary also specifically defines the terms "swipe right" and "swipe left" in connection with the Tinder brand:

> **Phrases**
> **swipe right (or left)**
> *informal* (on the online dating app Tinder) indicate that one finds someone attractive (or unattractive) by moving one's finger to the right (or left) across an image of them on a touchscreen.
>
> *'I swiped right, but sadly for me, she swiped left'*

19.    The English Oxford Dictionary also indicates that "swipe right (or left) of dating app Tinder fame" was consistently one of the dictionary's most "popular look-ups" in 2017.

20.    Indeed, Tinder's wordmarks have been famous since before Tantan even existed. For example, in a February 2014 article in TIME Magazine, TIME described the swipe in Tinder as "iconic."

21.    Similarly, in February 2015, a CIO.com article described Tinder's "swipe right" as a "trademark" of Tinder.

22.    In fact, the Atlanta Hawks, in connection with Tinder, hosted a highly publicized "Swipe Right Night" at an Atlanta Hawks game in January 2015, reflecting the then-existing fame of the mark.

23.    Match also has common law trademark rights in its "Super Like" mark.

24.    Match has used the "Super Like" mark in connection with mobile applications for social introduction and dating services nationwide, and in particular in connection with a feature within that app referring to a positive preference over and above the default positive preference

in the social introduction or dating services mobile application.

25.    Match has used the "Super Like" mark in commerce nationwide since at least September 9, 2015.

26.    Match's "Super Like" mark is either inherently distinctive or has acquired secondary meaning.

27.    Match, through Tinder, also has legally protectable trade dress.  For example, the ornamental design claimed in US D798,314 is a non-functional design element with source-identifying significance, either because it is inherently distinctive or has acquired secondary meaning.

28.    Match, through Tinder, regularly advertises this design, showing a user's card being swiped left or right.

 

29.    Third-party Internet publications have recognized that this design is synonymous with Tinder, describing the "Tinder swipeable cards interface" as "famous" and as taking "the app store by storm."

30.    This card swipe interface has also been described as "iconic."

6

31.     Indeed, this interface is so well-known and iconic that, when other businesses use similar interfaces in connection with non-social network, non-dating apps, third-party publications describe such uses as making the app look like Tinder.

32.     As reflected by the Patent Office's decision to grant the '314 Patent, this card-swipe design is non-functional.

33.     Similarly, Match has protectable trade dress in its "It's a Match!" screen, shown below:



34.     As with the swipeable card interface, this screen has distinctive trade dress source-identifying significance.

35.     Match, through Tinder, also regularly uses this screen as a source-identifier in various advertising materials, including in the Apple App store, the Google Play store, and on YouTube.

36.     Match has also delivered applications to the Copyright Office to register the general appearance of its app over time as copyrighted material, including various iterations of its card interface, its "It's a match!" screen, and its match queue—as well as the entire flow and

look-and-feel of its app.

37.    Match Group, LLC owns all rights to the intellectual property identified above.

**C.    Tantan Releases Tinder "Clone"**

38.    As third-party publications have repeatedly recognized, Tantan is plainly based on Tinder.

39.    For example, an article in "All China Tech" described Tantan as "a carbon copy of Tinder" and stated that Tantan was a Tinder "clone."

40.    Other publications, such as one written by Larry Salibra, recognize that Tantan's look and feel "copies" Tinder's.

41.    In connection with Tantan's recent acquisition by Momo, publications repeatedly described Tantan as the "Chinese Tinder."

42.    Similarly, an article from Quartz described Tantan as a "pound-for-pound copy of Tinder."

43.    Like Tinder, Tantan is a mobile dating app that relies on a blind mutual opt-in premise before users communicate.

44.    Like with Tinder, Tantan's users interact with "cards" containing photos of other users, as shown below.

 

45.    Like Tinder, Tantan users swipe left and right on cards containing user photos to indicate whether or not the user is interested in the person shown.

 

46.    Like Tinder, swiping left indicates a user is not interested in the person shown while swiping right indicates that the user is interested in the person.

47.    Like Tinder, Tantan also allows a user to interact with buttons in lieu of the swipes.  In both apps, pressing the "X" button below the profile is equivalent to a left swipe. Pressing the button showing a heart indicates the equivalent of a right swipe.

48.    Like Tinder, two users cannot communicate over Tantan until they both indicate

interest in one another.

49. Like Tinder, if two users both indicate interest, a screen is shown indicating a match.

50. Tantan's match screen is nearly identical to Tinder's. At the top of the screen is a large exclamatory phrase set off in a font other than the app's default font. Two circles, enclosed in white borders, display the photographs of the matched users. Below that, both apps include similarly sized and shaped buttons first presenting the option to either send a message and then, below that, giving the option to return to the swipe screen. Both match screens are placed against a dark background. These similarities are shown in the pictures below:



51. Tantan has also copied Tinder's "rewind" and "Super Like features" in essentially all respects.

52. Tinder's "rewind" feature, which allows a user to undo a mistaken negative preference, is used by pressing a button in the bottom left of the card interface that contains a yellow line icon pointing in a counter clockwise direction.

53. Tantan uses an identical or nearly identical yellow line icon in the same bottom left location and, despite Tinder's federal trademark registration for "rewind," Tantan also calls

this feature the "rewind":

 

54.     Tinder also has a feature known as a "Super Like."  In Tinder, the Super Like is a way to notify a potential match that the user is particularly interested in matching.

55.     When a "Super Like" is available to a Tinder user, the user uses a button in the bottom of the screen.  Currently in Tinder, the button appears in the bottom middle of the screen. Historically, however, the button appeared in the bottom right of the screen, as shown below:



56.     The button to "Super Like" a user has been characterized in Tinder by a blue star

button.  A user may also perform a "Super Like" gesture by swiping up on the card photograph.

57.    Again, Tantan's app has a verbatim copy of this feature.  Like Tinder, Tantan describes the feature as a "Super Like."

58.    Like Tinder, the button to perform a "Super Like" is a blue star.

59.    Like Tinder's historical interface, that blue star is located in the bottom right hand corner of the screen.

60.    Like Tinder, a user may also swipe up on the card to perform a "Super Like":

 

61.    Compounding the confusion from the copycat looks of the Tantan app, Tantan also makes extensive use of Tinder's registered "swipe" mark as well as its "swipe left" and "swipe right" word marks.

62.    For example, Tantan's website tells users to "swipe right to like, and swipe left to forget."

63.    Tantan's Twitter feed has also promoted its app by asking users to "Swipe, Date and Make New Friends."

**FIRST CAUSE OF ACTION: DESIGN PATENT INFRINGEMENT**

64.    Tantan's app infringes Match's Design Patent, D798,314.

65.    U.S. Patent D798,314 claims an ornamental aspect of Tinder's app design related to swiping left or right on cards containing photographs.

66.    The '314 Patent claims the ornamental design shown in Figures 1 and 2 of that patent:



67.    As the patent makes clear, only the solid lines illustrate the ornamental design claimed.  The broken lines are for illustrative purposes only.

68.    As discussed above, Tantan is a described Tinder "clone" and infringes on this ornamental design at least by making the design in the United States by distributing the software code that generates the design on a user device, by using the design in the United States in promotional materials, and by using the design in the app to sell services related to the app.

69.    Specifically, Tantan's app includes an ornamental design where photographic cards are swiped left or right, as shown below:

 

70.    The resemblance between the two apps is such as to deceive an ordinary observer into believing that Tantan's design is the same as Match's patented design.

71.    Tantan's app also infringes Match's Design Patent, D798,809.

72.    The '809 Patent claims the ornamental design shown in Figure 1 of that patent:



73.    Tantan infringes this design as well:

 

74. Specifically, Tantan infringes on this ornamental design at least by making the design in the United States by distributing the software code that generates the design on a user device, by using the design in the United States in promotional materials, and by using the design in the app to sell services related to the app.

75. As with the '314 Patent, the resemblance between the design claimed in the '809 patent and the design of the Tantan app is such as to deceive an ordinary observer to believing that Tantan's design is the same as Match's patented design.

## SECOND CAUSE OF ACTION: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(a)

76. Match has received a federal registration for the mark "swipe" in connection with computer application software for mobile devices—software for social introduction and dating services.

77. Match, through Tinder, first used the mark "swipe" in commerce on or around March 28, 2013 and continues to do so.

78. Tantan, by using Match's "swipe" mark to compete with Tinder in the market for software for social introduction and dating services, violated 15 U.S.C. § 1114. As discussed above, Tantan is prominently using Match's "swipe" mark throughout its app and promotional

activities.  Tantan's activities are causing, and unless enjoined, will continue to cause a likelihood of confusion and deception of members of the public, and, additionally, injury to Match and Tinder's reputation and goodwill as reflected in the "swipe" mark.  Tantan's use of the swipe mark will also actually deceive the public or is at least likely to deceive the public regarding the source, sponsorship, and/or affiliation of Tantan's app.

79.    These actions have also materially damaged the value of Match's registered "swipe" mark.

80.    As a proximate result of Tantan's actions, Match has suffered damages, including but not limited to, lost revenue and loss of goodwill associated with its Tinder app.

81.    Because of Tantan's competition with Tinder, and the circumstances indicating Tantan's general copying of the Tinder app, Tantan's actions also demonstrate an intentional, willful, and malicious intent to trade on goodwill associated with Match and Tinder's "swipe" mark.

82.    Match has also received a federal registration for the mark "rewind" in connection with downloaded software in the nature of a mobile application for internet-based dating and matchmaking.

83.    Match first used its "rewind" mark at least as early as March 2, 2015 and continues to do so.

84.    Tantan, by using Match's "rewind" mark to compete with Tinder in the market for software for social introduction and dating services, violated 15 U.S.C. § 1114.  As discussed above, Tantan is using Match's "rewind" mark in its app and promotional activities to promote a feature virtually identical to Match's own "rewind" feature in Tinder.  Tantan's activities are causing, and unless enjoined, will continue to cause a likelihood of confusion and deception of

members of the public, and, additionally, injury to Match and Tinder's reputation and goodwill as reflected in the "rewind" mark. Tantan's use of the rewind mark, particularly in combination with its use of Tinder's swipe-related marks, will also actually deceive the public or is at least likely to deceive the public regarding the source, sponsorship, and/or affiliation of Tantan's app.

85.    These actions have also materially damaged the value of Match's registered "rewind" mark.

86.    As a proximate result of Tantan's actions, Match has suffered damages, including, but not limited to, lost revenue and loss of goodwill associated with its Tinder app.

87.    Because of Tantan's competition with Tinder, and particularly in light of the circumstances indicating Tantan's general copying of the Tinder app, Tantan's actions also demonstrate an intentional, willful, and malicious intent to trade on goodwill associated with Match and Tinder's "rewind" mark.

### THIRD CAUSE OF ACTION: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

88.    Match is the owner of word marks "swipe left" and "swipe right" in connection with internet-based dating and matchmaking and similar services since at least on around March 28, 2013. Match has used and continues to use these marks throughout the United States.

89.    These marks are inherently distinctive or have acquired secondary meaning.

90.    These marks are valid and enforceable and in full force and effect.

91.    As described above, Tantan uses Match's "swipe left" and "swipe right" marks prominently. Tantan's doing so is likely to cause confusion or mistake and/or deceive the public as to the origin, sponsorship, or approval of the Tantan app.

92.    Match also has common law trademark rights in its "Super Like" mark.

93.    Match has used the "Super Like" mark in connection with mobile applications for

social introduction and dating services nationwide, and in particular in connection with a feature within that app referring to a positive preference over and above the default positive preference in the social introduction or dating services mobile application.

94.    Match has used the "Super Like" mark in commerce nationwide since at least September 9, 2015.

95.    Match's "Super Like" mark is either inherently distinctive or has acquired secondary meaning.

96.    As described above, Tantan uses Match's "Super Like" mark prominently to describe an identical functionality.  Tantan's doing so is likely to cause confusion or mistake and/or deceive the public as to the origin, sponsorship, or approval of the Tantan app and the Super Like feature.

97.    Because of Tantan's competition with Tinder, and the general circumstances suggesting that Tantan copied Tinder's app, Tantan's actions also demonstrate an intentional, willful, and malicious intent to trade on goodwill associated with the "swipe right," "swipe left," and "Super Like" word marks.

98.    These actions have caused damages to Match, including lost Tinder revenue as well as damages to Tinder's brand and associated goodwill.

**FOURTH CAUSE OF ACTION: INFRINGEMENT OF TRADE DRESS UNDER 15 U.S.C. § 1125(a)**

99.     Match is also the owner of legally protectable trade dress.  For example, the non-functional, ornamental design claimed in the '314 Patent is a design that is either inherently distinctive or has acquired secondary meaning designating Match and Tinder as the source of the product.

100.    As described above, this card-based swipe interface has been described as

"famous" or "iconic" by multiple third-party publications.

101.    This interface was first used in commerce some time before September 1, 2012.

102.    By including this same non-functional ornamental design, Tantan's app is likely to cause confusion or mistake and/or deceive the public as to the origin, sponsorship, or approval of the Tantan app.

103.    Match is also the owner of trade dress related to Tinder's "It's a Match!" screen, shown here:

 

104.    The Tinder app has included this same or similar design since it was initially released.

105.    The "It's a Match Screen!" was first used in commerce on August 2, 2012.

106.    As described above, Tinder uses this screen in various advertising materials, including on the App Store, Google Play Store, and on YouTube.

107.    This overall design is non-functional.

108.    By including this same non-functional design, Tantan's app is likely to cause confusion or mistake and/or deceive the public as to the origin, sponsorship, or approval of the

Tantan app, particularly in combination with Tinder's other trademarks.

109. As also discussed above, Tantan's similar screen is virtually identical to Tinder's.

110. By including this same non-functional design, Tantan's app is likely to cause confusion or mistake and/or deceive the public as to the origin, sponsorship, or approval of the Tantan app.

111. At least because of Tantan's competition with Tinder, and particularly in light of the circumstances indicating Tantan's general copying of the Tinder app, Tantan's actions also demonstrate an intentional, willful, and malicious intent to trade on goodwill associated with Match's trade dress.

112. These actions have caused damages to Match in the form of lost Tinder revenue as well as damages to Tinder's brand and associated goodwill.

## FIFTH CAUSE OF ACTION: TRADEMARK DILUTION

113. Certain of Tantan's actions also constitute trademark and trade dress dilution by blurring under 15 U.S.C. § 1125(c).

114. Match's wordmark "swipe right" is famous to the general public.

115. As discussed above, the phrase "swipe right" is included in the Oxford English dictionary, specifically associated with the Tinder app.

116. "Swipe right," especially in connection with "swipe left," is often described by third parties as a famous "cultural phenomenon."

117. These third parties describe the cultural phenomenon specifically in reference to Tinder and the Tinder app.

118. In light of Tinder's own extensive marketing as well as the descriptions of third-parties, "swipe right" has become effectively a "household name" identifying the Tinder brand and Tinder app.

119.    After Tinder's "swipe right" mark became famous, Tantan began using "swipe right" in connection with its app.  Tantan's routine use of the mark "swipe right" in connection with a direct competitor mobile dating service has caused and is likely to cause dilution by blurring, diluting the distinctiveness of "swipe right" as a brand signifier for Tinder and/or Match.

120.    These actions have harmed the reputation and goodwill associated with Tinder.

### SIXTH CAUSE OF ACTION: TEXAS UNFAIR COMPETITION.

121.    As discussed above, Match's trademarks and trade dress are valid marks in full force and effect.

122.    Tantan knowingly and willfully used these marks and this trade dress in commerce through the promotion of its app and in the app itself.

123.    Tantan's actions are likely to cause consumer confusion, cause consumer mistake, and/or deceive ordinarily prudent consumers as to the affiliation, connection, association, sponsorship, or approval of Match and/or Tinder products because Tantan's actions suggest that its own app originates form, is sponsored by, is authorized by, or is otherwise connected with Tinder and/or Match.

124.    These actions have materially damaged the value of Match's Tinder marks and trade dress.

125.    As a result, Match has suffered damages, including lost Tinder revenue and damage to goodwill associated with Tinder.

126.    Tantan's actions have caused injury to Match, and Match is entitled to damages caused thereby, including punitive damages as a result of Tantan's malicious and willful actions.

### SEVENTH CAUSE OF ACTION: COPYRIGHT INFRINGEMENT

127.    Tantan's actions also infringe Match's valid copyrights.

128.    The various iterations of the Tinder app are original and creative expressive works that constitute copyrightable subject matter under 17 U.S.C. § 101 *et seq.*  Match owns all rights in these works.  Prior to filing this lawsuit, Match has delivered applications to register these copyrights with the United States Registrar of Copyrights.

129.    Tantan had access to these works because the app was disseminated throughout the United States and the world.

130.    Tantan copied substantial original, copyrightable elements of the Tinder app.

131.    By its actions, Tantan has infringed and continues to do so by, without limitation, copying, publicly displaying, and distributing the Tantan app without authorization from Match.

132.    The similarities between the Tinder app and the Tantan app are not limited to only the general idea of a mutual opt-in matchmaking app or to choices dictated by that idea or functional considerations related to that idea.  Tinder made original expressive choices in its app design.

133.    For example, Tinder's card design is an ornamental expression not dictated by functional considerations or the general idea behind a blind mutual opt-in matchmaking or social networking app.  As discussed above in connection with design patent infringement and trade dress infringement, Tantan's app includes a virtually identical, or at least substantially similar, card-based design.

134.    Similarly, Tinder's "It's a Match Screen!" includes original expressions and is not dictated solely by functional choices, unoriginal designs dictated by OS design conventions, or the general ideas behind the app.  As discussed above, the current iteration of the Tantan app includes a match screen that is virtually identical or at least substantially similar to Tinder's copyrighted screen.

135.    Tantan's app further copies various aspects of Tinder's expressive choices regarding the design and arrangement of the "rewind," "Super Like," and positive and negative preference buttons.

136.    For example, although the rewind "icon" in Tinder may be similar to other icons reflecting similar "undo" style features in other apps, Tinder made an artistic expression in selecting yellow for the color of the icon as well as arranging the button on the bottom left of the interface screen.  Tantan copied this expression.

137.    Similarly, although Tinder was not the first to design a star or a blue star, Tinder made the artistic choice to design a blue star button specifically to refer to a "Super Like" feature in a dating app.  Tantan copied this expressive choice.

138.    Tinder also made expressive choices in arrangement of the buttons.  In at least some versions of its interface, Tinder made the choice to arrange all of those buttons beneath the card showing a picture of the potential match, with the far left button providing a "rewind," the next button a negative preference shown by an "X" icon, the next button a positive preference shown by a heart icon, and the next button a star, providing a "Super Like."  Tantan copied this expression.

139.    Further, Tinder made an original artistic expressive choice to have a hierarchy of positive preferences wherein the lower positive preference, the regular like, is reflected by a "heart" icon, and a higher positive preference, the "Super Like," is reflected by a star or blue star icon.  Tantan copied this hierarchy, the use of the icons within that hierarchy, and the placement of the icons within the hierarchy.

140.    Tinder also made the original artistic expressive choice to surround each of these circular buttons with a gray border, only slightly darker than the background on which the

buttons are placed.  Tantan similarly copied this design.

141.    As to all of these expressions, Tantan's app is substantially similar, if not virtually identical, to Tinder's original, expressive designs.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for the entry of a judgment from this Court:

1.    Judgment in Plaintiff's favor and against Defendant on all causes of action alleged herein;

2.    A preliminary and/or permanent injunction restraining Defendant, and its agents, servants, employees, attorneys, successors and assigns, and all persons, firms, and corporations acting in concert with them, from directly or indirectly violating Match's design patent rights, rights under the Lanham Act, rights under the Copyright Act, and common law trademark rights;

3.    For damages in an amount to be further proven at trial, including:

   a.    Damages assessed against Defendant pursuant to the Lanham Act, including compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits;

   b.    Damages under 35 U.S.C. § 284, including enhancement and including supplemental damages for any continuing post-verdict infringement up until entry of final judgment, with an accounting, as needed;

   c.    Damages under 35 U.S.C. § 289, including Tantan's total profit and revenue realized and derived from its infringement of U.S. Patents D798,314 and D798,809 in an amount not less than a reasonable royalty;

    d.   Damages under the Copyright Act, including all damages sustained by Match and/or Tinder, all profits derived by Defendant from such conduct, and/or statutory damages;

    e.   Damages for Defendant's common law unfair competition, including punitive damages;

4.    For Plaintiff's reasonable attorney's fees;

5.    For costs of suit incurred herein, including all disbursements;

6.    For pre-judgment and post-judgment interest on the damages awarded;

7.    If an injunction is not granted, that Plaintiff be awarded an ongoing licensing fee; and

8.    For such other and further relief (including any and all equitable relief) as the Court may deem to be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable of right by a jury.

DATED: March 19, 2018

Respectfully submitted,

**CALDWELL CASSADY & CURRY**

Bradley W. Caldwell (*Admission Pending*)
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
Email: jsummers@caldwellcc.com
Warren J. McCarty, III
Illinois State Bar No. 6313452
Email: wmccarty@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

*/s/ John P. Palmer*
John P. Palmer
State Bar. 15430600
Email: palmer@namanhowell.com
Naman, Howell, Smith & Lee, PLLC
400 Austin Avenue, 8th Floor
P.O. Box 1470
Waco, TX 76701
Telephone: (254) 755-4100
Facsimile: (254) 754-6331

**ATTORNEYS FOR PLAINTIFF
MATCH GROUP, LLC**